# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| **PAUL MEOLA,** individually ) <br> and as Administrator of the Estate of ) <br> Chase Joseph Meola, deceased, Bergen ) <br> County, New Jersey Surrogate's Court ) <br> Docket No. 2021-0311 ) <br> 33 Maple Road ) <br> Mahwah, NJ  07430 ) <br> ) <br> and ) <br> ) <br> **MARGARET MEOLA** ) <br> 33 Maple Road ) <br> Mahwah, NJ  07430 ) <br> ) <br> **Plaintiffs** ) <br> ) <br>         -vs- ) <br> ) <br> **PHI KAPPA PSI FRATERNITY, INC.** ) <br> 5395 Emerson Way ) <br> Indianapolis, Indiana  46226-1415 ) <br> ) <br> and ) <br> ) <br> **OHIO DELTA OF THE PHI KAPPA** ) <br> **PSI FRATERNITY** ) <br> 124 East 14th Avenue ) <br> Columbus, Ohio 43210 ) <br> ) <br> and ) <br> ) <br> **THE OHIO DELTA COMPANY** ) <br> c/o AFCB Incorporated ) <br> 40 South High Street, Suite 2600 ) <br> Columbus, Ohio  43215 ) <br> ) <br> and ) | CASE NO. 2:22-cv-3658 <br><br> Judge <br><br><br><br><br><br><br><br><br> **COMPLAINT FOR WRONGFUL** <br> **DEATH AND OTHER RELIEF** <br><br> **JURY DEMAND ENDORSED HEREON** |

1

| | |
|---|---|
| **JOHN DOES 1 – 10** <br> Names and Addresses Unknown <br> <br>    **Defendants** | ) <br> ) <br> ) <br> ) |

Now come the Plaintiffs, by and through their attorneys, and for their Complaint states as follows:

## INTRODUCTION

1. This is an action for damages based on the wrongful death of Chase Joseph Meola and the negligence that led to the violent shooting death of this Ohio State University student outside of a party at the Ohio State University chapter of the Phi Kappa Psi Fraternity.

2. Chase Meola was a fifth-year senior at the Ohio State University, and a beloved son and brother, friend to many, and a member of the Phi Kappa Psi fraternity at the Ohio State University. He is sorely missed by all those who knew and loved him.

3. Phi Kappa Psi chapters around the country, including the Ohio State University chapter, repeatedly flouted, ignored and violated laws and standard of conduct designed to protect the safety and well-being of university students inside and outside of the Phi Kappa Psi fraternity.

4. The National Phi Kappa Psi negligently supervised its local branches and ratified this behavior.

5. The acts and omissions of the National Phi Kappa Psi and its Ohio State University chapter created the dangerous conditions that led to the shooting death of Chase Meola.

## JURISDICTION AND VENUE

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 as Plaintiffs seek damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000) and all plaintiffs are of different citizenship than all defendants.

7. Venue is proper in the Southern District of Ohio pursuant to 28 U.S.C. § 1391(b) because the events giving rise to Plaintiffs' claims occurred within this district.

## PARTIES

8. Plaintiff, Paul Meola, is the Legal Administrator of the Estate of Chase Joseph Meola ("Chase," or "Chase Meola"), deceased, Bergen County, New Jersey, Docket Number 2021-0311 and is a resident of New Jersey (See Letter of Administration attached as Exhibit A), and he brings this lawsuit individually as the father of Chase and as Administrator of the Estate of Chase Joseph Meola.

9. Plaintiff, Margaret Meola is the mother of Chase Meola.

10. Defendant Phi Kappa Psi Fraternity, Inc., an Indiana not-for-profit corporation, commonly and also known as Phi Psi, is an American collegiate social fraternity founded in 1852 with its national headquarters at Laurel Hall, 5395 Emerson Way, Indianapolis, IN 46226 (the "National Phi Psi Fraternity").

11. Defendant Ohio Delta of the Phi Kappa Psi Fraternity, an Ohio not-for-profit corporation, also known as The Ohio State University ("OSU") chapter of Phi Kappa Psi is the local fraternity of the National Phi Psi Fraternity at OSU of which Chase Meola was a member (the "Ohio Delta Phi Psi Fraternity").

12. Defendant Ohio Delta Company owns the real estate located at 124 East 14th Avenue, Columbus, Ohio 43210 which is the Ohio Delta Phi Psi Fraternity House (the "Fraternity House").

13. The Ohio Delta Phi Psi Fraternity operates under the Constitution, by-laws, mandates and direction of the National Phi Psi Fraternity.

14. In addition to or in the alternative to the immediately preceding paragraph of this Complaint, the Ohio Delta Phi Psi Fraternity operates under the direction, supervision, permission and/or authority of the National Phi Psi Fraternity.

15. Upon information and belief, the Ohio Delta Company is an affiliate, subsidiary, parent or otherwise economically and/or legally connected or affiliated with the National Phi Psi Fraternity and/or the Ohio Delta Phi Psi Fraternity and/or also operates under the direction, supervision, permission and/or authority of the National Phi Psi Fraternity.

16. Defendant John Does 1-10 are intended to be any and all individuals and/or entities who are liable to plaintiff for the injuries and damages suffered which is the subject of this action. Jonn Does 1 – 10 contributed to the acts and omissions causing Plaintiff's harms and/or are entities by which one or more named Defendant also or actually does conduct its activities, holds itself out to the public, or is an additional or separate, correct legal entity of same. Plaintiffs further allege one or more of John Does 1 – 10 are affiliates, subsidiaries and/or parents of one or more of the named Defendants. The names and addresses of John Does 1 – 10 are unknown, and despite a good faith effort being made by the plaintiffs and their attorneys, the names and addresses of John Does 1 – 10 could not be ascertained prior to the preparation and filing of this Complaint.

17. Defendants National Phi Psi Fraternity, Ohio Delta Phi Psi Fraternity, Ohio Delta Company and Defendant John Does 1 - 10 shall be referred to jointly herein as "Defendants."

## STATEMENT OF FACTS

### Phi Kappa Psi Fraternities

18. Various chapters of Phi Kappa Psi have a long and sordid history of hazing, misconduct, and violation of college rules and applicable laws.

19. In a 2009 incident, members of the University of Arizona Phi Kappa Psi chapter were alleged to have stolen student newspapers that contained a news story about a student who alleged that she had been drugged with GHB and possibly raped while blacked out at a house party. The homework of two chapter members was found at the same location where the stolen newspapers were discarded. Emails from friends and relatives of Phi Kappa Psi members confirmed that the theft had been organized by the fraternity's leadership in an effort to stop the spreading of the allegations.

20. In 2012, the University of Dayton suspended its local chapter of the Phi Kappa Psi fraternity for one year after an underage pledge was forced to drink an excessive amount of alcohol, leading to hospitalization.

21. In 2013, Cornell University suspended its local chapter of the Phi Kappa Psi fraternity in response to serious hazing allegations.

22. In 2013, West Virginia University suspended its local chapter of the Phi Kappa Psi fraternity following an alleged hazing incident. According to the Morgantown Police Department, a 19-year-old pledge was pushed against a wall and suffered a split chin and broken teeth while doing push-ups and other hazing rituals. After a joint investigation by both the

university and the national fraternity, the chapter house was closed and the chapter was suspended for five semesters.

23. In 2014, Butler University suspended its Phi Kappa Psi chapter for three years for alcohol violations.

24. In 2014, Brown University suspended its Phi Kappa Psi chapter after two female students reported that they rapidly became intoxicated at the fraternity's party and tested positive for the date rape drug GHB. Chapter officials disputed the test results and a subsequent investigation by the university showed that the results were in fact inconclusive for the presence of GHB due to errors in laboratory procedures. In 2016, the female students sued the university for intentionally mishandling the case because a Brown University trustee's son was a fraternity member accused of drugging them with plans to sexually assault them.

25. In 2015, the Miami University suspended its local chapter of Phi Kappa Psi through 2019 due to reports of hazing and inappropriate pictures taken of a party attendee that were disseminated through the popular GroupMe messaging app.

26. In 2016, the University of Kentucky placed its local Phi Kappa Psi chapter on suspension for five years following reports of hazing and alcohol abuse. Accusations included forced alcohol consumption, forced exercises in/around vomit until the pledge vomited, and forced watching of homosexual pornography. The chapter admitted that these and other accused hazing activities did occur.

27. In 2017, Creighton University suspended its local chapter of Phi Kappa Psi after an alleged hazing incident. A Phi Kappa Psi pledge slashed a female student's neck in her dorm room upon returning from an event at the fraternity's house. The nineteen-year-old pledge stated that he was forced to take drugs due to failing a pledge test, which led to the slashing. After

6

investigation, an Omaha judge rejected the pledge's attempt to use fraternity hazing as a legal defense. The pledge pleaded no contest to felony second degree assault.

28. In 2017, Loyola University New Orleans suspended its local chapter of Phi Kappa Psi for two years following reports of alleged hazing. Accusations included jogging around Audubon Park in the dead of night. The university's chapter unsuccessfully appealed the suspension on the basis of "inappropriateness of the sanction", according to the university's news publication.

29. In 2020, on the campus of the University of Michigan, during the height of the coronavirus pandemic, a banner on the Phi Psi house urged people to remove masks, saying, "You can't eat ass with a mask on." This occurred during a back-to-school party in an attempt to encourage new pledges.

30. In 2020, Cornell University "permanently revoked" recognition of its chapter of Phi Kappa Psi nearly a year after a freshman student was found dead in a gorge after leaving an illegal Christmas-themed "dirty rush" party in October 2019.

31. During the 2017 – 2018 school year, Ohio State investigated the Ohio Delta Phi Psi Fraternity twice for potential code of conduct violations.

32. OSU placed a cease and desist on the Ohio Delta Phi Psi Fraternity in November 2017.

33. OSU placed the Ohio Delta Phi Psi Fraternity on a two-year probation in March 2018 for violations including hazing, endangering behavior, and alcohol.

34. On March 1, 2018, OSU placed the Ohio Delta Phi Psi Fraternity on an interim suspension.

35. On June 12, 2018, OSU announced it had suspended the Ohio Delta Phi Psi Fraternity until August of 2022 for hazing and endangering behavior violations of the Code of Student Conduct.

**Crime In the University District**

36. The University District is an off-campus area near OSU's campus at North High Street and the Fairgrounds, which is heavily populated by OSU students.

37. Upon information and belief, over eighteen registered sororities and fraternities are located within a 12-block radius of the University District.

38. Heavy alcohol consumption and the consequent intoxication of young people is an invitation for crime and criminal activity in the University District, especially on weekend nights at or near a party with heavy alcohol consumption, similar to what happened to Chase Meola.

39. The dense population of fraternities and sororities is an invitation for criminals and criminal activity in the University District.

40. In fact, upon information and belief, violent crimes in University OSU's District are 93% higher than the national average.

41. Upon information and belief, a resident of the University District has a 1 in 39 chance of becoming a victim of crime.

42. According to a report from the OSU student newspaper, the "Lantern," the Columbus Police Department received 218,000 service calls for service in the preceding five years in the off-campus cruiser district (encompassing the neighborhoods north of West Lane Avenue to East Arcadia Avenue, east of High Street to just beyond Summit Street, west of Olentangy River Road to North Star Road and south of 11th Avenue to West Third Avenue),

which equates to 43,600 service calls per year and nearly 120 service calls every single day. See https://www.thelantern.com/projects/2021/02/25/how-safe-are-ohio-states-off-campus-neighborhoods/ (last accessed on October 6, 2022). The Lantern article also noted that this district is believed to underreport crimes more than most areas of Columbus. *Id*. Accordingly, the actual crime rates are likely even higher than these service call numbers would indicate.

43. In 2018, per Federal Bureau of Investigation statistics, OSU had the second highest per capita rate of violent crime for all Ohio public schools and the highest per capita rate of aggravated assault. https://ucr.fbi.gov/crime-in-the-u.s/2018/crime-in-the-u.s.-2018/tables/table-9/table-9-state-cuts/ohio.xls (last accessed on October 6, 2022).

44. Collegetransitions.com's review of key crime statistics for calendar years 2018 through 2020 ranks safety levels from 1 (very unsafe) to 5 (very safe) and gives OSU a very unsafe ranking of 0.5 for "on-campus safety index," "off-campus safety index," and "overall safety index." https://www.collegetransitions.com/dataverse/campus-crime (last accessed on October 6, 2022).

45. Indeed, on August 30, 2020 (approximately six weeks before Chase was shot in the University District), OSU football player Haskell Garrett was shot in the face while in the University District, when he intervened to protect a woman in an argument with a man.

46. Defendants knew or should have known of the increased risks and level of crime in general, and violent crime in particular, in and around the area of the Ohio Delta Phi Psi Fraternity.

**Chase Meola**

47. Chase Meola was 23 years old on October 11, 2020 when he was gunned down in the University District at Ohio State University.

48. Chase Meola was a resident of New Jersey, and he resided at 33 Maple Road Mahwah, New Jersey, 07340.

49. Chase Meola was a member of the Ohio Delta Phi Psi Fraternity, whose house was located in the University District, though Chase himself did not live in the Fraternity house.

50. OSU had suspended the Ohio Delta Phi Psi Fraternity and it was under this suspension on and before October 11, 2020.

51. Upon information and belief, despite the suspension, Ohio Delta Phi Psi continued to hold itself out as an active fraternity, held parties and served alcohol and otherwise engaged in fraternity activities on and before October 11, 2020.

52. Upon information and belief, the National Phi Psi formally and/or informally and/or tacitly ratified and/or accepted Ohio Delta Phi Psi's continued operation and/or negligently failed to prevent it from continuing to operate and to do so with inadequate safeguards against the high levels of crime in and around this fraternity of which the National Phi Psi knew or should have known.

53. Upon information and belief, the National Phi Psi formally and/or informally and/or tacitly ratified and/or accepted Ohio Delta Phi Psi's continued operation and/or negligently failed to prevent it from doing so.

54. On October 11, 2020, the Ohio Delta Phi Psi Fraternity hosted a party for its members. Certain individuals who were not invited to the party showed up and entered the house.

55. Among the individuals who entered the house uninvited was Kinte Mitchell, an individual with a lengthy criminal history.

56. At some point, Kinte Mitchell was asked to leave the Fraternity House and Chase along with some of his fraternity brothers escorted Kinte Mitchell and others in his group out of the Fraternity house.

57. After exiting the Fraternity house, Kinte Mitchell shot Chase Meola in the head, killing him.

**COUNT ONE:  Wrongful Death**

58. Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully rewritten herein.

59. The Fraternity House, itself, and the University District in which this Fraternity House was located, contain dense populations of young, inexperienced college students, which increases crime levels as well as the relative vulnerability of such persons to become crime victims.

60. Defendants had a duty to warn visitors to the Ohio Delta Phi Psi House, like Chase, and their family members of the dangers associated with the Ohio Delta Phi Psi House and the University District.

61. Defendants had a special relationship with its members, like Chase, and owed a duty to warn its members and their family members of the dangers associated with the Ohio Delta Phi Psi House and the University District.

62. The University District where the Ohio Delta Phi Psi House is located is in a high crime area that experienced high levels of violent and non-violent crimes in the time period before Chase's violent death.

63. Defendants knew that the University District where the Ohio Delta Phi Psi House is located experienced high levels of violent and non-violent crime in the time period before Chase's death.

64. Defendants owed a duty of care to adequately warn Chase Meola and its other students of the high levels of crime and violent crime in the University District, of which Defendants were aware.

65. Defendants owed a duty to undertake reasonable steps to make these areas safer for Chase Meola, its other Ohio Delta Phi Psi members and visitors to the Ohio Delta Phi Psi House.

66. Defendants owed a duty to undertake reasonable steps to educate Chase Meola and its other young, inexperienced fraternity members and visitors on actions they may take to protect themselves from criminal activity.

67. Defendants failed to provide security patrols, mobile lighting units, security cameras, and other safety measures that could have prevented this tragedy.

68. Defendants failed to collaborate with Columbus Police Department and/or the Ohio State University Police Department to provide expanded surveillance and adequate security for the Ohi Delta Phi Psi House and for events occurring therein and/or under the auspices of Phi Kappa Psi.

69. Defendants failed to provide services to its Ohio Delta Phi Psi members to educate about personal safety and increase awareness of crime prevention.

70. Defendants failed to provide a security guard or similar person to provide security at the Fraternity House generally and for parties at the Fraternity House specifically.

71. Under the totality of the circumstances, when considering the level of crime in the University District and Ohio Delta Phi Psi's continued operation (as ratified and/or permitted by the National Phi Psi Fraternity) and continued service of alcohol at parties conducted in spite of the suspension of Ohio Delta Phi Psi, and consideration of the behavior of one or more Defendants which led to its suspension, the above-listed security measures were necessary to protect the safety of Ohio Delta Phi Psi members and/or guests.

72. Defendants negligently failed to render the Ohio Delta Phi Psi House safe for Chase Meola and its other members and visitors for the reasons set forth above and violated its duty of care to these individuals.

73. Defendants' negligence and gross negligence is a proximate and direct cause of Chase Meola's death.

74. Plaintiffs are entitled to damages under R.C. 2125.01, *et seq.* for the wrongful death of Chase Meola and for their loss of his services, protection, care, assistance, society, companionship, comfort, guidance, counsel and advice, and were forced to incur funeral and burial expenses.

75. Plaintiffs are further entitled to compensatory damages, interest, and their costs due to the negligence of Defendants.

**COUNT TWO**:  **Survival Action**

76. Plaintiffs re-state and re-allege the preceding allegations of the Complaint as if fully re-written herein.

77. Chase Meola was forced to endure great conscious pain and suffering and emotional distress during the course of his encounter with Kintie Mitchell and his shooting, up until the moment he died.

78. Chase Meola filed no action for this cause during his lifetime, but under the laws of Ohio pursuant to R.C. 2305.21, *et seq*. this action survives and may be asserted by his estate.

79. Thus, Plaintiffs claim damages for the conscious pain, suffering, and emotional distress incurred by Chase Meola.

**COUNT THREE:  Negligence, Gross Negligence and Recklessness**

80. Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully rewritten herein.

81. Defendants acted negligently, with gross negligence and/or with recklessness, under Ohio law, by failing to warn Chase Meola and its other students and their family members of the dangers associated with the Ohio Delta Phi Psi House and the University District in which the House was situated.

82. Defendants had a special relationship with Chase Meola and other members of Ohio Delta Phi Psi House that rise to exercise due care in and near the Ohio Delta Phi Psi House.

83. Defendants acted negligently, with gross negligence and/or with recklessness when it failed to render the University District and other off-campus areas safe for Chase Meola and its students for the reasons set forth above and violated its duty of care to Chase Meola and its other students.

84. Defendants' negligence and gross negligence was a direct and proximate cause of Chase Meola's death and Plaintiffs' damages.

**COUNT FOUR:  Negligence (Against Defendant Phi Kappa Psi Fraternity, Inc.)**
           **(*Respondeat Superior*/Vicarious Liability)**

85. Plaintiffs re-state and re-allege the preceding allegations of the Complaint as though fully rewritten herein.

86. Defendants Ohio Delta of the Phi Kappa Psi Fraternity, Ohio Delta Company, and John Does 1 - 10 were acting as agents of Phi Kappa Psi Fraternity, Inc. and within the scope of that agency at all relevant times as the use of the Fraternity House and the partying and serving of alcohol within and near its grounds was calculated, designed and carried out to facilitate and promote the purported bonds of brotherhood among its members as well as loyalty from this chapter and to generate interest in joining and remaining a member of this fraternity.

87. Defendant National Phi Psi Fraternity relies on purported bonds of brotherhood and loyalty, and desire to join and remain a member, was its means to generate its primary source of revenue through membership dues and fees.

88. Pursuant to the doctrine of *respondeat superior* and/or vicarious liability, because Defendants Ohio Delta of the Phi Kappa Psi Fraternity, Ohio Delta Company, and John Does 1 - 10 were acting as Defendant National Phi Psi Fraternity's agents and within the scope of their agency at all relevant times and/or because Defendant National Phi Psi Fraternity ratified the actions of these Defendants, Defendant National Phi Psi Fraternity is vicariously liable for all damages caused by these Defendants.

WHEREFORE, Plaintiffs pray for compensatory damages in excess of Seventy-Five Thousand and 00/100 Dollars ($75,000.00), jointly and severally against all Defendants, burial and other expenses, the costs of this action, punitive damages, attorney's fees, and any other relief to which they are entitled at law or equity.

/s/ Richard W. Schulte
**RICHARD W. SCHULTE (0066031)**
**STEPHEN D. BEHNKE (0072805)**
Wright & Schulte, LLC
865 South Dixie Drive
Vandalia, Ohio  45377
Telephone:   (937) 435-7500
Facsimile:   (937) 435-7511
rschulte@yourlegalhelp.com

## **JURY DEMAND**

Plaintiffs hereby demand a jury as to all triable facts.

/s/ Richard W. Schulte
**RICHARD W. SCHULTE (0066031)**
**STEPHEN D. BEHNKE (0072805)**

16