**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DISTRICT**

| | | |
|---|---|---|
| **PAUL MEOLA, individually and as** | ) | |
| **Administrator of the Estate of Chase** | ) | **CASE NO. 2:22-cv-3658** |
| **Joseph Meola, et al.** | ) | |
| | ) | |
| **Plaintiffs.** | ) | |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **PHI KAPPA PSI FRATERNITY, INC.,** | ) | |
| **et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**DEFENDANTS, PHI KAPPA PSI FRATERNITY, INC. AND THE OHIO DELTA**</u>
<u>**COMPANY'S, MOTION TO DISMISS PLAINTIFFS' COMPLAINT**</u>

Defendants, Phi Kappa Psi Fraternity, Inc. ("Fraternity") and The Ohio Delta Company ("House Corporation") (collectively, House Corporation and Fraternity shall be referred to as "Defendants"), by and through counsel and moves this Court to dismiss Plaintiffs' Complaint (D.E. 1) for a failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Memorandum in Support of this motion is attached hereto.

Respectfully submitted,

_/s/ Emily Cooney Couch_____
Micah E. Kamrass          (0092756)
Emily Cooney Couch       (0096815)
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Facsimile: (513) 721-4268
mkamrass@manleyburke.com
Emily.couch@manleyburke.com
*Attorneys for Defendants, Phi Kappa Psi*
*Fraternity, Inc. and the Ohio Delta Company*

## <u>MEMORANDUM IN SUPPORT OF PHI KAPPA PSI FRATERNITY INC. AND THE OHIO DELTA COMPANY'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>

Defendants, Phi Kappa Psi Fraternity, Inc. ("Fraternity") and The Ohio Delta Company ("House Corporation")(collectively hereafter "Defendants"), provide the foregoing Memorandum in Support of their Motion to Dismiss Plaintiffs' Complaint and state as follows.

## <u>BACKGROUND</u>

On October 11, 2020, Kinte Mitchell ("Mr. Mitchell") was an uninvited person at a party in a densely populated location. D.E. 1, ¶¶ 39, 55. When Mr. Mitchell was asked to leave and, indeed, had left the Property, he caused Chase Meola's death. D.E. 1, ¶¶ 56- 57 ("After exiting the [] house, Kinte Mitchell shot Chase Meola in the head, killing him"). This is a horrific tragedy, and it is entirely Mr. Mitchell's responsibility. In their Complaint, Plaintiffs seek to shift the responsibility from Mr. Mitchell, the shooter, to either the property owner of the location where the party transpired or the national fraternal organization. Neither the House Corporation, which leased the property to other tenants, nor the Fraternity, which had no direct involvement, are responsible for this tragedy. Mr. Mitchell is responsible, and Ohio law does not permit Plaintiffs to shift that responsibility away from Mr. Mitchell.

**A.      Plaintiffs mischaracterize the Defendants and their duties.**

Plaintiffs attempt to shift responsibility from a third-party, Mr. Mitchell, to the Defendants allegedly because the area around which Chase Meola died was unsafe. Stated another way, Plaintiffs allege Defendants were required to "warn visitors to the Ohio Delta Phi Psi House;" and "undertake reasonable steps to educate Chase Meola" because "the University District where the Ohio Delta Phi Psi House is located in a high crime area that experienced high levels of violent and non-violent crimes." D.E. 1, ¶60, 66, and 62, respectively. Plaintiffs further allege Defendants

2

had an affirmative "duty to undertake reasonable steps to make these areas safer." D.E. 1, ¶65. Plaintiffs allege that Defendants acted negligently, with gross negligence and/or with recklessness by "failing to warn Chase Meola . . . of the dangers associated with the Ohio Delta Phi Psi House and the University District in which the House is situated." D.E. 1, ¶85. By that same logic, all property owners within the University District and organizations with vague ties to such property owners are legally responsible for warning and ensuring the safety of all persons residing in and passing through the University District.

Plaintiffs' claims against Fraternity and House Corporation are all rooted in theories of premises liability. These legal theories require that Plaintiffs show that the Defendants owed a special duty or had a special relationship with Chase Meola. When making these allegations, Plaintiffs mischaracterize Defendants' relationships to Mr. Mitchell and Chase Meola but, nevertheless, fail to allege a duty of care necessary to state a cause of action.

**B.      The Phi Kappa Psi Fraternity, Inc. and the Ohio Delta Company are separate legal entities with no supervisory or financial dependence upon one another.**

The corporate separateness of national fraternities, local house corporations and local chapters is well established. There is no legal or financial interdependence between those entities, nor are there any claims in the Complaint alleging that they function as alter-egos. From a corporate standpoint, the Fraternity and the House Corporation are two separate and distinct entities. Each has separate purposes and a separate governing body. Phi Kappa Psi Fraternity, Inc. is an Indiana not-for-profit corporation established in 1852. D.E. 1, ¶10. The Ohio Delta Company is an Ohio not-for-profit corporation established in 1940. *See* Exhibit A "Ohio Secretary of State," attached hereto and incorporated by reference. These entities have separate bylaws, policies, procedures, board members, and essential purposes. Phi Kappa Psi Fraternity, Inc. is a national organization committed to engaging men of integrity to further develop their intellect and enhance

their community involvement. The essential purpose of the Fraternity is to promote and cultivate social interaction, education, training, and development of proper values and services to the community. The Ohio Delta Company is a local house corporation that was initially formed with the sole purpose of holding title to property and manage its finances. It is nothing more than a landlord for college students.

**C.      The Ohio Delta Company is the sole owner of the Property which it leases to individual tenants who have exclusive possession and control over the Property.**

As Plaintiffs acknowledge, in 2018, the Ohio Delta of the Phi Kappa Psi Fraternity ("Chapter") ceased operations. This was a result of The Ohio State University and Phi Kappa Psi Fraternity, Inc.'s suspension of the Chapter. D.E. 1, ¶34-35, 50. Defendant, Ohio Delta Company, is the legal entity that owns the real property located at 124 East 14th Avenue, Columbus, Ohio 43210 ("Property"), which was previously utilized as the Chapter's house when the Chapter was operating. D.E. 1, ¶12.

Since it is undisputed that the Chapter was suspended years prior to the tragic events outlined in the Complaint, there was no "fraternity house" at the House Corporation's Property. That could not be possible. Instead, there was a group of individual students living at the Property who were not active members of the Fraternity, just as there are in countless properties nearby. Simply stated, the House Corporation was a landlord that leased apartments to individual students. The fact that a fraternity chapter previously operated out of the facility years prior to this tragedy does not legally differentiate the House Corporation from any other landlord leasing apartments off-campus to students of The Ohio State University.

The Fraternity's involvement is even more attenuated. After the Chapter ceased operations, the Fraternity was no longer involved with this Property or in any way with students at The Ohio State University. The Complaint alleges no involvement of any kind by the Fraternity following

the suspension of the Chapter, two (2) years prior to the tragic events in the Complaint. The Fraternity does not own or have any interest in the Property. The Fraternity is not involved with nor does it have a relationship with the tenants that lease the Property. The Fraternity is simply unrelated to this lawsuit.

## **STANDARD OF REVIEW**

"A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal of a complaint for failure to state a claim upon which relief can be granted." *Rack & Ballauer Excavating Co. v. City of Cincinnati*, S.D.Ohio No. 1:13-cv-30, 2013 U.S. Dist. LEXIS 92112, at *5 (July 1, 2013)(internal quotations omitted). Fed. R. Civ. P. 8(a) requires that the complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.* This requires more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). In fact, in determining a motion to dismiss, "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 106 S. Ct. 2932, 92 L. Ed. 2d 209 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]" *Id.*

To survive a motion to dismiss, a complaint must include enough factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice . . . ." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)(internal quotations omitted).

In ruling on a Rule 12(b)(6) motion, a court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Williams*, 498 F. App'x at 534. Courts may take into account matters of public record when considering a motion to dismiss. *Wyser-Pratte Management Co., Inc. v. Telxon Corp*., 413 F.3d 553, 560 (6th Cir. 2008). Therefore, reference to public records and the Plaintiffs' documents does not convert this motion into a motion for summary judgment. *Bolan Textile (HK), Ltd. v. DeHaan*, 2013 U.S. Dist. LEXIS 36918 (S.D. Ohio Mar. 18, 2013).

## LEGAL ANALYSIS

There is no dispute that Mr. Meola was not leasing an apartment from the House Corporation and was merely an invited person at a party. There is also no dispute that Mr. Mitchell, a third party, was an uninvited guest at the same party. Further, there is no dispute that the pair left the building, where after Mr. Mitchell tragically shot Mr. Meola. While tragic, this set of facts does nothing to implicate Defendants in liability.

Under Ohio law, there is no general duty to protect a person from harm caused by a third party. *Littleton v. Good Samaritan Hosp. & Health Ctr.,* 529 N.E.2d 449 (1988); *Gelbman v. Second Natl. Bank of Warren*, 458 N.E.2d 1262 (1984). This means that Defendants had no general duty to protect Mr. Meola from Mr. Mitchell's acts. Further, to the extent that House Corporation can be considered a business owner, House Corporation did not possess the Property at the time of Mr. Meola's death. Because Plaintiffs have failed to allege anything more than a general duty

of care, Plaintiffs cannot shift the responsibility for Mr. Mitchell's acts onto Defendants. Specifically, (I) Count I: Plaintiffs failed to state a Wrongful Death Claim; (II) Count II: Survival Action is not an independent cause of action according to Ohio law; (III) Count III: Plaintiffs' negligence-based claims fail because Defendants have no duty to Plaintiffs; and (IV) Count IV: Plaintiffs fail to allege negligence based on respondeat superior because they fails to allege a supervisory relationship between Fraternity and House Corporation.

**Count I:        Plaintiffs' Complaint fails to state a claim for wrongful death against Defendants because Plaintiffs fail to allege a special relationship.**

Kinte Mitchell, a third party, caused Chase Meola's death. D.E. 1, ¶57 ("Kinte Mitchell shot Chase Meola in the head, killing him"). Section 2125.01 of the Ohio Revised Code, states that,

> No action for the wrongful death of a person may be maintained against the owner or lessee of the real property upon which the death occurred if the cause of the death was the violent unprovoked act of a party other than the owner, lessee, or a person under the control of the owner or lessee, unless the acts or omissions of the owner, lessee, or person under the control of the owner or lessee constitute gross negligence.

Ohio Rev. Code §2125.01. For the Defendants to be liable in light of the foregoing, Plaintiffs must allege that Defendants were an owner, lessee, or in control of the Property, and were grossly negligent. As a threshold matter, the Fraternity is not the owner, a lessee, or a person under the control of the owner. Frankly, the Fraternity is entirely uninvolved. As neither the owner of the Property, nor the actor that caused harm to the decedent, Plaintiffs failed to plead any set of facts where the Fraternity could be liable for wrongful death.

Plaintiffs allege that the House Corporation is an owner of the Property – meaning that Plaintiffs must allege that the House Corporation was grossly negligent. Conclusory legal statements without factual support are never enough on their own to state a claim for relief. *See Mitchell v. Lawson Milk Co.*, 532 N.E.2d 753 (Ohio 1988); *See also Ashcroft v. Iqbal, supra*, 129

S. Ct. 1937, 1949-50. Gross negligence is defined as conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. *Soper by Soper v. Hoben*, 195 F.3d 845, 847 (6th Cir.1999). The Complaint does not give Defendants "fair notice of what the gross negligence and reckless conduct claim is and the grounds upon which it rests." *Durham v. Niffenegger,* S.D.Ohio No. 1:18-cv-0091, 2019 U.S. Dist. LEXIS 35034, at *28-29 (Mar. 5, 2019)(internal citations omitted).

> Reckless conduct involves a conscious choice of a course of action…and the degree of the risk for recklessness is so marked as to amount substantially to a difference in kind than the quantum of risk for negligence. In contrast, negligence is mere inadvertence, incompetence, unskillfulness, or a failure to take precautions to enable the actor adequately to cope with a possible or probable future emergency or even intentionally doing an act with knowledge that it contains a risk of harm to others.

*Miller v. Cardinal Mooney High School*, 2021-Ohio-720, 168 N.E.3d 1254, ¶ 1 (7th Dist.). At best, Plaintiffs aver the latter. Plaintiffs aver that "Defendants knew that the University District… experienced high levels of violent and non-violent crime in the time period before Chase's death." D.E. 1, ¶63. Plaintiffs allege that because House Corporation knew about crime in the surrounding area it should have provided private security controls, mobile lighting units, security cameras, collaborate with Columbus Police to expand surveillance, and provide security guards. D.E. 1, ¶67-70. By this same rationale, any property owner in any area in which crime occurs should provide these robust security measures. This allegation is absurd and Defendants alleged failures to secure these security measures does not constitute gross negligence.

Recall that the House Corporation is merely the landlord for the property, renting individual rooms to students. Even the most liberal reading of the Complaint does not give rise to any allegations of gross negligence. "Gross negligence [is] the failure to exercise any or very slight care… [it] has also been described as a failure to exercise even that care which a careless person would use." *Thompson Elec. v. Bank One*, 525 N.E.2d 761, 768 (1988). Plaintiffs have not alleged

any actions of the House Corporation that remotely demonstrate actions so reckless as to demonstrate a failure to exercise the care a careless person would use. Plaintiffs' Complaint has failed to state a claim for wrongful death against Fraternity and House Corporation upon which relief can be granted.

**Count II:** **Ohio Revised Code Section 2305.21 does not constitute a separate cause of action, rather allows certain claims to survive the death of the person potentially entitled to relief.**

A survival action is not a legally cognizable cause of action. Pursuant to Ohio Revised Code §2305.21, "causes of action for . . . injuries to the person . . . also shall survive; and such actions may be brought notwithstanding the death of the person entitled or liable thereto." This statute is intended to allow for certain claims to survive the death of a potentially injured party and to complement O.R.C. §2125.01.

> Although originating in the same wrongful act or neglect, the two claims are quite distinct, no part of either being embraced in the other. One is for the wrong to the injured person and is confine to his personal loss and suffering before he died, while the other is for the wrong to the beneficiaries and is confined to their pecuniary loss through his death. One begins where the other ends…

*Thompson v. Wing*, 9th Dist. Summit C.A. NO. 15764, 1993 Ohio App. LEXIS 543, at *5 (Jan. 27, 1993)(*Koler v. St. Joseph Hosp.,* 69 Ohio St.2d 477, 432 N.E.2d 821 (1982)(internal quotations omitted)). In essence, "where an alleged negligent act was such as would have, if death had not ensued, entitled a person to maintain an action therefor, a cause of action . . . ." remains viable pursuant to Ohio Revised Code §2305.21. *Koler v. St. Joseph Hosp*., 69 Ohio St.2d 477, 477, 432 N.E.2d 821 (1982). In order to successfully assert claims under Ohio Revised Code §2305.21, Plaintiffs must allege an underlying wrongdoing on the part of Defendants. As indicated below, Plaintiffs have failed to state a claim upon which relief can be granted for any underlying cause of action.

**Count III:**     **Plaintiffs' negligence claims fail because Defendants had no duty related to a third-party's violent acts.**

Proving negligence requires the existence of a duty, the defendant's breach of that duty, and an injury to the plaintiff proximately resulting from the defendant's breach. *See Strother v. Hutchinson*, 67 Ohio St.2d 282, 285, 423 N.E.2d 467 (1981). Here, neither the Fraternity nor House Corporation owed a duty of care relevant to Mr. Mitchell or Mr. Meola. Ohio courts engage in the traditional Restatement analysis to determine the existence and scope of a duty owed. *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 1 (8th Dist.). Accordingly, it is well settled that there is "no duty to control the conduct of a third person to prevent the commission of physical harm to another person unless (A) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or (B) a special relationship exists between the actor and the other which gives to the other the right to protection." *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 1 (8th Dist.).

   **A.     There is no special relationship such that Defendants were expected to control Mr. Mitchell.**

Defendants can only be found liable under this prong if they were legally required to control Mr. Mitchell.  "Relationships that may give rise to a duty to control a third person's conduct include the following: (1) parent and child; (2) master and servant; and (3) custodian and person with dangerous propensities." *Hall v. Watson*, 7th Dist. Mahoning, Case No. 01 CA 55, 2002-Ohio-3176 ¶ 16. There are no allegations that Defendants had any such relationship with Mr. Mitchell. Therefore, Defendants had no duty to control Mr. Mitchell's actions and cannot be liable.

   **B.     There is no special relationship such that Defendants were expected to protect Mr.  Meola, in the circumstances alleged, from Mr. Mitchell.**

Under the state of the law, owners **out of possession** of the property owe no duty to protect third persons from criminal conduct by the possessors of the premises absent

10

a special relationship with the injured person. *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 1 (8th Dist.)(Emphasis Added). Accordingly, Defendants are only liable if they had a special relationship requiring them to protect Mr. Meola. "Relationships which result in a duty to protect others include: 1) common carrier and its passengers; 2) innkeeper and guests; 3) possessor of land and invitee; 4) custodian and individual taken into custody; and 5) employer and employee." *Jackson v. Forest City Ents.*, 111 Ohio App.3d 283, 285, 675 N.E.2d 1356 (8th Dist. 1996), citing *2 Restatement of the Law 2d*, Torts (1965), 116, at Section 314(A). Neither the Fraternity, nor the House Corporation had such relationships with Mr. Meola.

        1.      The Fraternity had no duty to protect Mr. Meola.

As indicated above, the Fraternity is entirely uninvolved with this property since the Chapter was closed in 2018, two (2) years prior to the tragic death of Chase Meola. The Fraternity had no recognizable special relationship with Kinte Mitchell, Chase Meola, or any other persons. Further, the Fraternity did not undertake any of the foregoing relationships that would obligate it to protect others. The Fraternity is neither the possessor of the Property, nor an employer to Mitchell, Meola, or any other person that would obligate Fraternity to protect Meola from harm. Plaintiffs' Complaint has failed to allege any legally recognizable duty of care as it relates to the Fraternity. Accordingly, Plaintiffs' allegations against Fraternity for negligence, gross negligence, and recklessness fail as a matter of law.

        2.      The House Corporation had no duty to protect Mr. Meola because it did not possess the Property.

Under that theory of liability, the relationship between the entrant and the owner of the premises is not relevant (i.e., whether the entrant is an invitee/social guest, licensee, or trespasser). *See, e.g., Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 132, 1995- Ohio 203, 652 N.E.2d 702 (1995); *Miami Univ.*, 2017-Ohio-8586, 88 N.E.3d 1013, at ¶ 33 (the duty to protect

another from harm arises from a special relationship between the parties). Where a party other than the owner possesses a premises (a leased premises), the possessor or occupier and not the owner owes the applicable legal duty to the entrant. *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 13 (8th Dist.).

> In *Simpson*… in concluding that the duty to keep a premises safe for others is owed only by the one in possession and control of the land, the Ohio Supreme Court did not discuss the injured person's status on the property. In that case, the plaintiff was attacked by a third party while walking in the parking lot adjacent to a business she had recently frequented. According to the Ohio Supreme Court, her status as an invitee while in the establishment was irrelevant to the question of whether the business owner owed a duty of care while the plaintiff traversed the parking lot possessed by another entity. The court concluded that because there was no special relationship between the plaintiff and the business owner at the time of the injury, her status as an invitee was irrelevant.

*Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 14 (8th Dist.)(citing *Simpson v. Big Bear Stores Co.*, 73 Ohio St.3d 130, 132, 1995- Ohio 203, 652 N.E.2d 702 (1995)). The House Corporation had no duty to protect Meola from harm, the possessors of the Property did. The House Corporation was merely a landlord that leased the Property to tenants. A landlord has no duty to protect one third party - Chase Meola - from the actions of another third party. Stated another way, Mr. Meola did not lease from the House Corporation. D.E. 1, ¶¶ 49. He lived in another location. Also, the House Corporation leased the property to other persons. One of those persons invited Mr. Meola to the property, but did not invite Mr. Mitchell. Then Mr. Mitchell and Mr. Meola left the property and the violent act occurred. Simply by leasing to an unidentified third party, the House Corporation did not acquire a duty to protect Mr. Meola.

The House Corporation lost the control necessary for potential liability when it executed leases with the John Doe Defendants who are individual tenant(s). A lease transfers possession and control of the premises to the tenants. *Guerra v. Kresser*, 6th Dist. Ottawa No. OT-05-016,

12

2005-Ohio-6524, ¶ 1. There is limited exception to the no general duty rule - under premises liability - where the business owner knows or should have known there is substantial risk of harm to its invitees on the premises in the possession and control of the business owner. *See Simpson v. Big Bear Stores Co*., 652 N.E.2d 702 (1995). However, this only applies if the property is in the possession and control of the business owner, which is not applicable here. *Id.*

The unidentified person who invited Mr. Meola to the party may be liable for failing to protect Mr. Meola, but the House Corporation is not. At common law, it is the occupier or tenant, **not** the landlord, who is liable for injuries occurring to a third person. *Martin v. Lambert,* 2014-Ohio-715, 8 N.E.3d 1024, ¶ 1 (4th Dist.). A tenant in possession is, for liability purposes, the owner of the property. *Id.* If the building afterwards becomes dangerous in law, the owner is not liable for an injury occurring thereon. *Id.*

> [A]landlord will not be liable for injuries a third person sustains on the tenant's premises if the landlord is in no way linked with management or direction of the affairs being conducted on such premises... To exercise control over the property sufficient to impose liability, the landlord must do more than retain authority over routine and common acts by a landlord such as having the authority to approve or disapprove any structural changes, being responsible for making repairs, and having the power to evict the tenant. Instead, to have possession and control over the premises, the landlord must retain an absolute right to admit or exclude persons from the area.

*Martin v. Lambert*, 2014-Ohio-715, 8 N.E.3d 1024, ¶ 1 (4th Dist.). Ohio law precludes House Corporation from a duty of care as the Landlord that does not possess the Property.

Additionally, even if the House Corporation was deemed to be Mr. Meola's host, which it was not, the House Corporation still owed no duty. "The scope of the duty owed by the landowner is dependent on the status of the person, i.e., trespasser, licensee, or invitee, who enters upon the land. In other words, the duty owed is predicated on the 'nature of the relationship' between the decedent or injured party and the property owner 'at the time of the accident.'" *Bodnar v.*

*Hawthorn of Aurora L.P.*, 11th Dist. No. 2006-P-0002, 2006 Ohio 6874, ¶ 37, citing *Mitchell v. Cleveland Elec. Illum. Co.*, 30 Ohio St.3d 92, 94, 30 Ohio B. 295, 507 N.E.2d 352 (1987). There is no special relationship between a social guest and a host. *See Slabaugh v. Kukta*, 9th Dist. No 05CA0022, 2005 Ohio 6454, ¶ 10 (where the party was a social guest on the property, no special relationship with the host was found to exist); *Mullens v. Binsky*, 130 Ohio App.3d 64, 71, 719 N.E.2d 599 (10th Dist.1998) (a social guest and a host do not have a special relationship).

> The duty to a social guest requires the host to exercise ordinary care not to cause injury to his guest by any act of the host or by any activities carried on by the host while the guest is on the premises, and to warn the guest of any condition on the premises which is known to the host and which one of ordinary prudence and foresight in the position of the host should reasonably consider dangerous, if the host has reason to believe that the guest does not know and will not discover such dangerous condition.

*Reddick v. Said*, 11th Dist. Lake No. 2011-L-067, 2012-Ohio-1885, ¶ 1 (internal quotations omitted). Meola did not live at the Property. D.E. 1, ¶60. Meola was at most a social guest on the Property on or about October 11, 2020. D.E. 1, ¶54, 60. When Mitchell showed up at the party, Meola escorted him outside of the Property. D.E. 1, ¶54-56. That is when Mitchell shot and killed Meola. D.E. 1, ¶57.

Further, Plaintiffs' Complaint attempts to impose a duty of care upon Defendants based on allegations of criminal activity in the surrounding area. Importantly, "foreseeability of the harm caused relates to causation and does not impact the existence of a duty." *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 1 (8th Dist.). If the defendant has no duty to act based on the absence of a special relation with the third person or the tortfeasor, the foreseeability of the resulting harm is irrelevant — there is no duty to act as a matter of law. *Id.* Allegations of crime in the area are not enough to create a duty of care for House Corporation. "Foreseeability concerns the scope of the duty owed, not its existence. The foreseeability question need only be answered after it is

established that the business owner is in possession of the premises upon which the injury occurred." *Masterson v. Brody*, 2022-Ohio-3428, 196 N.E.3d 927, ¶ 1 (8th Dist.). As House Corporation was not in possession at the time Mr. Meola was shot and killed, the House Corporation had no duty of care. House Corporation did not have a special relationship with Mr. Mitchell either. Mr. Mitchell was not a tenant living on the Property. As indicated, Mr. Mitchell was an uninvited guest to a party hosted by a tenant possessing the Property. Mr. Mitchell was not even a student or affiliated with The Ohio State University. *See Meola et al. v. The Ohio State University,* Case No. 2022-00724JD (Court of Claims 2022). Mr. Mitchell was not a member of the Fraternity or House Corporation. Neither the House Corporation or Fraternity had even a remote connection to Mr. Mitchell.

Assuming Arguendo that the House Corporation *did* owe Mr. Meola a duty of care, Mr. Meola's death was not a foreseeable risk of harm. First and foremost, a business is not an absolute insurer of the safety of invitees. *Sayles v. SB-92 L.P.,* 138 Ohio App.3d 476, 477, 741 N.E.2d 613 (8th Dist.2000). Second, "the criminal behavior of third persons is not predictable to any degree a certainty. It would be unreasonable, therefore, to hold a party liable for acts that are for the most part unforeseeable." *Id.* Therefore, "the circumstances must be somewhat overwhelming before a business will be held to be on notice of and therefore under the duty to protect against the criminal acts of others." *Sayles v. SB-92 L.P.,* 138 Ohio App.3d 476, 477, 741 N.E.2d 613 (8th Dist.2000). Foreseeability is based upon whether a reasonably prudent person would have anticipated that an injury was likely to result from the performance or nonperformance of the act of the owner. *Sayles v. SB-92 L.P.,* 138 Ohio App.3d 476, 477, 741 N.E.2d 613 (8th Dist.2000). Plaintiffs allege that due to the vague and indeterminant statistics about crime in the areas surrounding the Property and one outlying incident of violent crime immediately prior to Mr. Meola's death, it was foreseeable

that its tenants would throw a party and invite a guest that would get into an altercation with a non-invited person that would lead to the guest's death. Plaintiffs have failed to allege how House Corporation's inactions caused Mr. Meola's death or how the security measures suggested could have prevented Mr. Meola's death.[1]

Succinctly, House Corporation did not control the Property when Meola was killed and was merely a landlord. Any premises liability vests with the tenants in the custody and control of the Property at the time of Meola's death. Further, any such liability is limited by Meola's characterization in the Complaint as a social guest. Plaintiffs' have failed to state a claim upon which relief can be granted as House Corporation owed no legally recognizable duty of care to Meola.

**Count IV:  Plaintiffs' Complaint failed to state a claim for respondeat superior because Plaintiffs fail to allege a supervisory relationship with Defendants.**

Respondeat superior – or vicarious liability - arises out of the relationship between superior and subordinate, and ceases when that relationship ceases to exist. *Mularski v. Brzuchalski,* 117 Ohio App. 480, 481, 192 N.E.2d 669 (6th Dist.1961).  The fundamental nature of that relationship is control by the superior, such that the superior is responsible for its subordinate's acts. *Id.* This liability of an employer for an employee's negligence derives from the established principles of agency law. *Ohio Civ. Rights Comm. v. Akron Metro. Hous. Auth.,* 119 Ohio St.3d 77, 2008-Ohio-3320, 892 N.E.2d 415, ¶ 1.

This issue has been extensively litigated.  There is no question that, as a matter of law, there is no agency relationship between a national fraternity and a local chapter, house corporation, or individual members. "The existence of general policies governing the operation of local

---

[1] Since the incident, Mr. Mitchell was arrested and charged with Mr. Meola's death and is awaiting trial. *See State v. Mitchell,* Franklin C.P. No. 20-CR-004965.

chapters and the authority to discipline them for violations does not justify imposition of a duty on national fraternities." *Steagall v. Alpha Epsilon Pi Found.,* App. No. B308076, 2022 Cal. App. Unpub. LEXIS 4538, at *26 (July 22, 2022). Agency is a relationship which results from manifestation of consent by one party to another. *Swanson v. Wabash College* (1987), Ind.App., 504 N.E.2d 327, 331. The elements of agency are consent and control. *Id.* An agent must acquiesce to the arrangement and be subject to the principal's control. *Foster v. Purdue Univ. Chapter*, 567 N.E.2d 865, 872 (Ind.App.1991). No theory of vicarious liability can be imputed where the underlying tortfeasor is not liable. *Shaheen v. Yonts*, W.D.Ky. No. 5:06-CV-00173-TBR, 2009 U.S. Dist. LEXIS 2074, at *29-30 (Jan. 9, 2009). It would be inconsistent with the principles of vicarious liability to find the Fraternity liable for acts for which the underlying agents are not liable. *Id.*

As previously discussed, Plaintiffs have failed to allege any recognizable duties of care imposed upon the House Corporation as it relates to Meola. Accordingly, the Fraternity cannot be held vicariously liable for the actions of the House Corporation if the House Corporation had no duty of care. Similarly, the Chapter had been suspended since 2018. D.E. 1, ¶¶34-35, 50. Further, as a matter of law, chapters are not agents of a national fraternity. This is especially true of suspended chapters.

Plaintiffs have failed to state a claim against Fraternity upon which relief might be granted. A complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). To establish the "facial plausibility" required to "unlock the doors of discovery," the plaintiff cannot rely on "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action," but, instead, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). Plaintiffs cannot defeat this Motion by naming unidentified John Does as Defendants and making no allegations as it relates to them or their conduct. Defendants cannot be held hostage in litigation by the speculative naming of unknown Defendants. Plaintiffs have failed to state a claim upon which relief can be granted against Fraternity for vicarious liability.

## **CONCLUSION**

Plaintiffs brought similar claims against The Ohio State University in the Court of Claims, Case No. 2022-00724JD. The Court of Claims dismissed that action in large part because there is no general duty of care to protect someone from harm. Any duty of care that relates to this action stems from premises liability. The Fraternity is not the owner or possessor of the Property. The House Corporation was not in possession of the Property and had no foreseeable duty of care to protect social guests of its tenants. Neither the Fraternity or House Corporation were the actual cause of Meola's death, or even tenuously affiliated. There are no legally recognizable duties of care imposed upon Fraternity or House Corporation to warn or protect Meola. For the following reasons, Plaintiffs' Complaint must be dismissed for failure to state a claim upon relief can be granted.

Respectfully submitted,

_/s/ Emily Cooney Couch_____

Micah E. Kamrass            (0092756)
Emily Cooney Couch          (0096815)
MANLEY BURKE, LPA
225 W Court Street
Cincinnati, Ohio 45202
Phone: (513) 721-5525
Facsimile: (513) 721-4268
mkamrass@manleyburke.com
Emily.couch@manleyburke.com

*Attorneys for Defendant, Phi Kappa Psi*
*Fraternity, Inc. and the Ohio Delta Company*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served upon the following on this 12th

day of May, 2023, via the Court's electronic system, electronic mail, and/or standard U.S. mail:

| | |
|---|---|
| Richard W. Shulte | Ohio Delta of the Phi Kappa Psi Fraternity |
| WRIGHT & SHULTE, LLC | 124 East 14th Avenue |
| 865 South Dixie Drive | Columbus, Ohio 43210 |
| Vandalia, Ohio 45377 | *Defendant* |
| rschulte@yourlegalhelp.com | |

Stephan D. Behnke
Behnke, Martin & Shulte, LLC
131 North Ludlow Street
Suite 840
Dayton, Ohio 45402
sbehnke@legaldayton.com
*Attorneys for Plaintiffs*

_/s/ Emily Cooney Couch_____
Micah E. Kamrass          (0092756)
Emily Cooney Couch          (0096815)



**Fri May 12 2023**

EXHIBIT
A

| | |
|---|---|
| **Entity#:** | 178949 |
| **Filing Type:** | CORPORATION FOR NON-PROFIT |
| **Original Filing Date:** | 04/03/1940 |
| **Location:** | COLUMBUS |
| **Business Name:** | THE OHIO DELTA COMPANY |

| | |
|---|---|
| **Status:** | Active |
| **Exp. Date:** | 02/14/2028 |

## Agent/Registrant Information

FRATERNITY MANAGERS ASSOCIATION
1812 N. HIGH ST
COLUMBUS OH 43201
02/14/2023
Active

## Filings

| Filing Type | Date of Filing | Document ID |
|---|---|---|
| DOMESTIC ARTICLES/NON-PROFIT | 04/03/1940 | C086_1727 |
| CERTIFICATE OF CONTINUED EXISTENCE | 11/18/1960 | B182_1535 |
| CERTIFICATE OF CONTINUED EXISTENCE | 01/19/1965 | B390_1627 |
| CERTIFICATE OF CONTINUED EXISTENCE | 02/18/1975 | E040_0854 |
| CERTIFICATE OF CONTINUED EXISTENCE | 02/12/1980 | E710_1246 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 02/12/1980 | E710_1246 |
| DOMESTIC/AMENDED RESTATED ARTICLES | 02/27/1981 | E874_0400 |
| CERTIFICATE OF CONTINUED EXISTENCE | 02/08/1985 | F610_1150 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 09/22/1988 | G472_1369 |
| LETTER/RENEWAL NOTICE MAILED | 05/25/1993 | 000000277694 |
| CERTIFICATE OF CONTINUED EXISTENCE | 06/24/1993 | H624_0397 |



**Fri May 12 2023**

| | | |
|---|---|---|
| LETTER/RENEWAL NOTICE MAILED | 03/03/1998 | 000000277695 |
| CERTIFICATE OF CONTINUED EXISTENCE | 04/15/1998 | 6251_1136 |
| LETTER/RENEWAL NOTICE MAILED | 12/16/2002 | 200235063131 |
| CERTIFICATE OF CONTINUED EXISTENCE | 01/09/2003 | 200301000158 |
| LETTER/RENEWAL NOTICE MAILED | 09/11/2007 | 200725422946 |
| CERTIFICATE OF CONTINUED EXISTENCE | 09/17/2007 | 200726102738 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 12/08/2009 | 200934300488 |
| LETTER/RENEWAL NOTICE MAILED | 08/07/2014 | 201421900029 |
| CANCELED/FAILURE TO FILE/STATEMENT CONT. EXISTENCE | 12/15/2014 | 201434900473 |
| DOMESTIC/REINSTATEMENT | 01/16/2015 | 201502101201 |
| LETTER/RENEWAL NOTICE MAILED | 09/16/2019 | 201925900066 |
| CERTIFICATE OF CONTINUED EXISTENCE | 09/27/2019 | 201926802522 |
| DOMESTIC AGENT SUBSEQUENT APPOINTMENT | 02/14/2023 | 202304600660 |

UNITED STATES OF AMERICA
STATE OF OHIO
OFFICE OF SECRETARY OF STATE

*I, Frank LaRose, Secretary of State of the State of Ohio, do hereby certify that this is a list of all records approved on this business entity and in the custody of the Secretary of State.*



*Witness my hand and the seal of the Secretary of State at Columbus, Ohio this 12th of May, A.D. 2023*

*Ohio Secretary of State*